IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| REGINA Y. GALLAHAN<br>5944 Amber Ridge Road<br>Haymarket, VA 20169,<br><br>      Plaintiff,<br><br>v.<br><br>DONALD C. WINTER<br>Secretary of the Navy<br>Department of the Navy<br>1000 Navy Pentagon<br>Washington, DC 20350-1000,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

1. Plaintiff Regina Y. Gallahan, by and through undersigned counsel, hereby files this civil action against Defendant Donald C. Winter, in his official capacity only, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 et seq., and seeks relief pursuant to Title VII and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the ADEA, for Defendant's unlawful discrimination against Plaintiff on the basis of her race (African American) and age (DOB 09/04/49), when Defendant denied Plaintiff a promotion from a GS-13 Program Analyst position to GS-14 Supervisory Budget Analyst position and selected a white employee instead. Plaintiff requests as relief: a promotion to GS-14, retroactive to the earliest date that discrimination is found, with full back pay and benefits

including interest; maximum compensatory damages; and attorney fees, costs, and expenses, in order to remedy Defendant's unlawful acts.

## PARTIES

2. Plaintiff Regina Y. Gallahan, a citizen of the United States, is a longtime federal government employee with over 34 years of government service including over 17 years at the U.S. Navy's Naval Sea Systems Command (NAVSEA, or the "Agency"). Until September 2007, Plaintiff was employed in the Comptroller Directorate within NAVSEA's Foreign Military Sales (FMS) program at the Washington Navy Yard in the District of Columbia. The actions complained of occurred in the District of Columbia. Ms. Gallahan resides at 5944 Amber Ridge Road, Haymarket, VA 20169. Ms. Gallahan is African American and over 50 years of age.

3. Defendant Donald C. Winter is Secretary of the Navy and the head of the United States Department of the Navy, and as such, has ultimate authority over the actions of NAVSEA. Defendant is sued in his official capacity only. His address is 1000 Navy Pentagon, Washington, DC 20350-1000.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this Complaint because it presents a question of federal law. 28 U.S.C. § 1331.

5. Specifically, this Court has jurisdiction over this Complaint pursuant to 42 U.S.C. §§ 2000e-5(f)(3), 2000e-16(d), and 1981a.

6. This Court is the proper venue pursuant to 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3). The majority of the discriminatory acts took place in the District of Columbia.

7. Ms. Gallahan timely initiated contact with Defendant's Equal Employment Opportunity ("EEO") Office regarding her claim of non-promotion and discrimination (Agency Case No. 06-00024-01644) on April 3, 2006, within 45 days of the February 21, 2006 denial of a promotion to a GS-14 Supervisory Budget Analyst position. She was notified of her right to file a formal discrimination complaint by letter from the Agency dated June 6, 2006. Ms. Gallahan then timely filed her formal EEO complaint on June 21, 2006. After the completion of the Report of Investigation ("ROI") regarding Plaintiff's formal EEO complaint, Defendant's EEO office issued a letter dated April 27, 2007, to Ms. Gallahan authorizing her to request an Equal Employment Opportunity Commission ("EEOC") hearing, which she timely did on May 18, 2007. On July 12, 2007, Plaintiff's counsel sent a letter to EEOC Administrative Judge Kathryn Brown, stating Plaintiff's intention to withdraw her case at the EEOC in order to file a Complaint in U.S. District Court. On December 27, 2007, the Agency mailed a final decision to Plaintiff and her counsel, which Plaintiff's counsel received on January 2, 2008. Accordingly, Plaintiff timely files this Complaint within 90 days of receipt of the Agency's final decision and more than 180 days after the filing of Plaintiff's

formal EEO complaint. See 42 U.S.C. § 2000e-16(c).

## FACTS

8.  Plaintiff Regina Y. Gallahan is a dedicated, longtime federal employee with over 34 years of service, including 34 years at the Department of the Navy. After working at the Department of the Navy in Norfolk, Virginia for approximately 16 years, Ms. Gallahan moved to the Foreign Military Sales (FMS) Comptroller Directorate at NAVSEA, where she worked for over 17 years, until she took a job with the Department of Defense's National Geospatial Intelligence Agency in September 2007.

9.  For the last seven years of her tenure at NAVSEA, Ms. Gallahan served as a highly qualified GS-560-13 Budget Analyst in the FMS Comptroller Directorate. She had extensive training and certifications and consistently received Outstanding Performance cash awards and high performance ratings in her position as a GS-13 Budget Analyst.

10. In 2004, Ms. Gallahan applied for a promotion to a GS-510-14 Supervisory Systems Accountant within the Comptroller Directorate when it was advertised. Her supervisor and a director within the Comptroller Directorate, Francis ("Frank") Albert (white male, GS-15), denied Ms. Gallahan the promotion and selected Tammy Buisson (white female) instead.

11. Mr. Albert informed Ms. Gallahan that she did not receive the promotion because she had not completed 24 credit hours of university-level accounting courses, which he said was

required for a position in the 510 series. At the time, Ms. Gallahan lacked three courses for this requirement.

12. Ms. Gallahan asked Mr. Albert what she should do to get the next GS-14 position in the office. Mr. Albert explained that she needed three additional accounting courses and stated that the next GS-14 position would definitely be a 510 series Supervisory Systems Accountant. Due to her interest in advancing within the Comptroller Directorate's office, Ms. Gallahan completed the three requisite accounting courses in order to be promoted the next time a position became available.

13. In November 2005, Mr. Albert announced an open GS-14 position, to which Ms. Gallahan applied. However, Mr. Albert labeled the position as a Supervisory Budget Analyst in the 560 series, which did not require any accounting courses.

14. Mr. Albert knew that Darlene Pritz (white female), a GS-13 Program Analyst, did not have the 24 hours of accounting courses required for the previous GS-14 position in the 510 series. Plaintiff believes that Mr. Albert changed the GS-14 position to a 560 series in order for Ms. Pritz to qualify for the position.

15. Mr. Albert also added reconciliation and case closure to the vacancy announcement for the GS-14 position, because he knew that Ms. Pritz had experience in this area. Mr. Albert did not know, however, that Ms. Gallahan had 10 years of specialized experience in reconciliation and case closure, which she had

accomplished before working for Mr. Albert.

16. On the same day that the position was announced, Ms. Gallahan overheard Mr. Albert ask Ms. Pritz's supervisor, Pam Morgan-May (white female), whether she had made Ms. Pritz aware of the opening.

17. After the position closed, on December 5, 2005, Mr. Albert asked Ms. Gallahan if she had applied for the position. When she told him that she had applied, he warned her that the interview questions would be "extremely difficult." Surprised, given her 17 years of experience in FMS and her repeated high performance ratings and awards, she told Mr. Albert that she felt confident that she could answer any questions he asked. At that point, Mr. Albert informed Ms. Gallahan that he was on the selection panel and that Margaret ("Maggie") Maguire, Deputy Commander, Comptroller (white female, SES), would be the selecting official.

18. Mr. Albert had originally planned to make the selection; however, he thought there might be "problems," so he asked Ms. Maguire to be the selecting official. (EEO Counselor's Report at 7.)

19. Several days after Mr. Albert's strange comments to Ms. Gallahan, she observed Mr. Albert, Ms. Buisson, Ms. Maguire, and Ms. Pritz (all white) meet behind closed doors, for the purpose of introducing Ms. Pritz to Ms. Maguire, who did not know Ms. Pritz. This was not done with any other candidate for

the position, including Ms. Gallahan (African American). Several witnesses in the counseling stage of the EEO investigation confirmed this meeting between Ms. Pritz and three members of the all-white selection panel.

20. In February 2006, Ms. Gallahan interviewed for the GS-14 position in front of the all-white selection panel comprised of Mr. Albert (Deputy Director, GS-501-15), Ms. Buisson, (Supervisory Systems Accountant, GS-510-14), Cynthia Pettibone (Financial Manager, GS-501-15), and Ms. Maguire (Comptroller, SES).

21. This selection panel had no racial diversity, as every member was white. Further, no EEO representative sat on the panel during the interviews or deliberations.

22. No one on this selection panel was a subject matter expert in budget execution within FMS, which was the subject area for the GS-14 position at issue. In fact, Ms. Buisson's knowledge of FMS was limited, and Ms. Pettibone had no knowledge of FMS and was only on the panel as a favor to Mr. Albert.

23. In contrast, Ms. Gallahan was a subject matter expert in budget execution within FMS, having managed the budget of all FMS cases assigned to her, having developed and monitored budgets for several major FMS weapon programs, having managed payments from and refunds to foreign customers within the FMS program, having performed detailed budget reviews and audits, and having verified that budget execution documents comply with

the U.S. Code. In addition, Ms. Gallahan had even taught a course in the field of accounting and budgeting within the FMS program. In 2003, Ms. Gallahan provided Standard Accounting and Reporting System (STARS) training in Philadelphia at the Naval Inventory Control and was the only member of her Division who taught a three-day hands-on training session.

24. In comparison with Ms. Gallahan, Ms. Pritz was not a subject matter expert in budget execution within FMS. Ms. Pritz had worked primarily in case closure, rather than budget execution, in her work with FMS as a NAVSEA employee (about five years) and as a government contractor before that. Ms. Pritz's work as a contractor was substantially different and more limited than that of Ms. Gallahan, who had worked as a NAVSEA employee for approximately 17 years before the GS-14 position was awarded in March 2006. For instance, as a contractor, Ms. Pritz could not execute the budget, allocate funds to different Navy program offices, or approve funding documents or contracts. In fact, Ms. Pritz was initially hired as a NAVSEA employee into the GS-12 position vacated by Ms. Gallahan, after Ms. Gallahan was promoted to a GS-13 position.

25. In the interview process, Ms. Gallahan was surprised that no member of the selection panel was a subject matter expert in FMS, and because of the panel members' lack of knowledge, they had no way to accurately assess the answers to specific questions.

26. After the interview before the selection panel, Ms. Gallahan was informed that she was one of the top three candidates for the GS-14 position. Ms. Maguire called her in for a second interview, which consisted of general questions and lasted approximately five minutes.

27. Ms. Gallahan knew the subject matter, duties, and responsibilities for the position extremely well and was confident that she stood an excellent chance of obtaining the position.

28. On February 21, 2006, Ms. Maguire informed Ms. Gallahan that she did not receive the position. Ms. Maguire said that she had chosen Ms. Pritz, based on recommendations from the panel and Ms. Pritz's "interviewing skills."

29. One of the members of the panel, Mr. Albert, had an established pattern of selecting white employees for GS-14 positions. In fact, only white employees had been selected for GS-14 positions while Mr. Albert was the Director of the office, specifically Ms. Buisson (white female) and Greg Nalepa (white male). Further, Mr. Albert either made or participated in the decisions to select two younger, white women, Ms. Buisson and later Ms. Pritz, over Ms. Gallahan (and Windell Hutchinson, African American male, age 46, who was the other top-three candidate not selected when Ms. Pritz was promoted).

30. With regard to the promotion of Ms. Pritz, Mr. Albert signed the Merit Promotion Package as the selecting official,

but later asked Ms. Maguire to be the selecting official because he foresaw "problems" with the selection.

31. Three witnesses in the administrative processing of Ms. Gallahan's EEO complaint, Jalinda Huff, Pat Smith, and Kathy Yorke, supported Ms. Gallahan's claims that race and age were factors in management's selection of Ms. Pritz over Ms. Gallahan. They stated that Mr. Albert did appear to treat African American employees differently than white employees, and there were no African American GS-14's in his shop. Further, Nancy Armistead (white female) stated that age is a factor in promotions, as management prefers younger people.

32. Mr. Albert (GS-15) had four female subordinate supervisors (GS-14's) working closely with him, all of whom were white, blond women who were younger than Ms. Gallahan (three were under the age of 40, and one was in her early 50's). Employees in the office at times referred to this group as "Frank's Angels." [The other subordinate supervisor was Greg Nalepa (white male, GS-14), but he seldom met with Frank and the group of female GS-14's in their meetings.]

33. Several witnesses in the administrative processing of Ms. Gallahan's EEO complaint testified that Ms. Gallahan was much more experienced and knowledgeable than Ms. Pritz, with regard to the GS-14 position at issue.

34. Ms. Gallahan's qualifications greatly exceeded those of Ms. Pritz at the time of Ms. Pritz's promotion. At that

time, Ms. Gallahan had been with the federal government for over 32 years, with 17 years of direct experience, whereas Ms. Pritz had been a federal employee for just five years. Ms. Pritz's experience for the relevant position was far inferior to that of Ms. Gallahan, especially with regard to the execution process[1] required by the position. Finally, Ms. Gallahan, during her tenure as a GS-13, had acted for her supervisors when they were out of town or otherwise unavailable.

35. Ms. Gallahan had also served in many special projects at NAVSEA. For instance, Ms. Gallahan served as NAVSEA's Budget Officer for the Special Defense Acquisition Fund (SDAF). In this role, she liaised with officials at the Defense Security Cooperation Agency (DSCA) and other program managers to coordinate the emergency acquisition of military equipment or services. Ms. Gallahan also developed STARS training programs and worked as a STARS instructor on several occasions.

36. In terms of education, Ms. Gallahan's education was clearly more advanced than that of Ms. Pritz. Notably, Ms. Pritz holds a GED (or high school diploma) and no college education, whereas Ms. Gallahan holds a Bachelor of Science degree in Business Administration and has also taken post-college courses in accounting, in order to satisfy the

---

[1] The analysts in the office perform tasks in two basis areas: "execution" and "reconciliation." Ms. Pritz was hired originally as a contractor on the reconciliation side and had much less experience in execution than Ms. Gallahan.

11

requirements for the GS-14 position, as described above in paragraphs 11-14.

37. Although Ms. Gallahan had completed the requisite accounting courses prior to applying for the GS-14 position in late 2005, Mr. Albert changed the requirements of the position to accommodate Ms. Pritz, who was not even a high school graduate. Mr. Albert later introduced Ms. Pritz to members of the selection panel in a private meeting before the interviews occurred. Mr. Albert also changed the selecting official from himself to Ms. Maguire when he foresaw "problems" with his plan. Mr. Albert's actions clearly reveal the pre-selection of Ms. Pritz for the position.

38. Mr. Albert served as the coordinator of the selection panel, asking Ms. Maguire, Ms. Buisson, and Ms. Pettibone to serve on the panel. This all-white selection panel followed Mr. Albert's lead and promoted yet another younger, white employee to be a member of Mr. Albert's team of white, female supervisors.

39. The actions of Mr. Albert and selecting official Ms. Maguire, in the promotion of another younger, white employee (Ms. Pritz) over the more experienced and better qualified Ms. Gallahan, were discriminatory.

## CAUSES OF ACTION

### Count I

40. Based upon the facts described in the preceding

paragraphs, Defendant unlawfully discriminated against Plaintiff Regina Y. Gallahan in 2006 on the basis of her race (African American) by selecting a white individual and denying Ms. Gallahan a promotion to GS-14 Supervisory Budget Analyst, in violation of its own personnel procedures and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq. Defendant's explanations for its discrimination of Plaintiff are pretextual.

### Count II

41. Based upon the facts described in the preceding paragraphs, Defendant unlawfully discriminated against Plaintiff Regina Y. Gallahan in 2006 on the basis of her age (57 at the time) by selecting a younger individual (41 years old at the time) and denying Ms. Gallahan a promotion to GS-14 Supervisory Budget Analyst, in violation of its own personnel procedures and the Age Discrimination in Employment Act, as amended, 29 U.S.C. § 621 et seq. Defendant's explanations for its discrimination of Plaintiff are pretextual.

### RELIEF REQUESTED

42. Plaintiff requests the following relief:

   a. Retroactive promotion to the earliest date that discrimination is found;

   b. Full back pay, with interest, and back benefits from the date of Plaintiff's non-promotion to the date of judgment;

    c. Maximum compensatory damages to which Plaintiff is entitled after proof at trial;

    d. Appropriate record correction consistent with the facts of this case and the above-requested relief;

    e. Reasonable attorney fees at prevailing market (<u>Laffey</u>) rates and the costs and expenses of this action and Plaintiff's predecessor administrative complaint at NAVSEA; and

    f. Such other relief as the Court deems just and appropriate.

### JURY TRIAL

43. Plaintiff requests a trial by jury on all issues that are triable by jury.

*Daniel K. Gebhardt*
JOSEPH D. GEBHARDT
(D.C. Bar No. 113894)
DANIEL K. GEBHARDT
(D.C. Bar No. 975703)
GEBHARDT & ASSOCIATES, LLP
1101 17th Street, N.W.
Suite 807
Washington, DC 20036-4716
(202) 496-0400

March 28, 2008    Attorneys for Plaintiff

LAW CLERK ASSISTANT:
Lauren B. Miller

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

### I (a) PLAINTIFFS
REGINA Y. GALLAHAN

### DEFENDANTS
DONALD C. WINTER
DEPARTMENT OF THE NAVY

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  20169
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  20350-1000
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

GEBHARDT & ASSOCIATES, LLP
1101 17th St., N.W., Suite 807
Washington, DC 20036-4716
(202) 496-0400

Case: 1:08-cv-00544
Assigned To : Collyer, Rosemary M.
Assign. Date : 3/28/2008
Description: Employ. Discrim.

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ● 2 U.S. Government Defendant
- ○ 3 Federal Question (U.S. Government Not a Party)
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ○ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other) OR ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ⊙ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☒ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ⊙ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Discrimination based upon race and age pursuant to Title VII of the 1964 Civil Rights Act, 42 USC § 2000e et seq., and the ADEA, 29 USC § 621 et seq.

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ 300,000.00   Check YES only if demanded in complaint
JURY DEMAND: YES ☒ NO ☐

**VIII. RELATED CASE(S) IF ANY** (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE March 28, 2008   SIGNATURE OF ATTORNEY OF RECORD   *Daniel K. Gebhardt*

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I. COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.